**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
| | |
|---|---|
| FIRRA ABRAMOV, : | |
| : | Civil Case No. |
| Plaintiff, : | |
| : | **COMPLAINT** |
| v. : | |
| : | |
| COMPLEX MEDIA, INC., COMPLEX MEDIA : | **Jury Trial Demanded** |
| HOLDINGS, LLC, RICHARD ANTONIELLO, : | |
| in his individual and professional capacities, and : | |
| SCOTT FINTZY, in his individual and : | |
| professional capacities, : | |
| : | |
| Defendants. : | |

------------------------------------------------------------X

Plaintiff Firra Abramov hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. Complex Media, Inc. is a media company that states on its website that it attempts to "Expose The True Face Of Modern America . . . [and] Defy The Stale Expectations Of the Past." However, there is nothing modern or progressive about the way the company treats its employees. Far from defying the mores of the past, the company endorses the decades-old offensive stereotype that pregnant women are problematic employees, and if a pregnant woman has the "gall" to stand up for herself and assert her rights, she will be fired. That is exactly what happened to Plaintiff Firra Abramov.

2. Incredibly, Defendants Complex Media, Inc., Complex Media Holdings, LLC (together, "Complex"), Richard Antoniello and Scott Fintzy (all together "Defendants") not only fired Ms. Abramov mere days after she complained about pregnancy discrimination both verbally and in writing, but they told her they were treating her as having "resigned" even though she very clearly stated that she was not resigning at all. Of course, Defendants were simply

1

trying to protect themselves by creating a false narrative that did not include the truth – that Defendants were firing a pregnant employee who had just complained about pregnancy discrimination.

## NATURE OF THE CLAIMS

3. The unlawful discrimination and retaliation described herein was committed in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"), the New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq*. ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101 *et seq*. ("NYCHRL").

## ADMINISTRATIVE PREREQUISITES

4. Ms. Abramov will be filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and will file an Amended Complaint alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*., and as amended by the Pregnancy Discrimination Act, following the EEOC's issuance of a Notice of Right to Sue.

5. Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

6. Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA.

The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including employment practices alleged herein, occurred in this district.

## PARTIES

9. Plaintiff Firra Abramov is a former employee of Complex who worked at its New York City office. She is a resident of the State of New York and at all relevant times met the definition of an "employee" and/or "eligible employee" under all applicable statutes.

10. Defendant Complex Media, Inc. is a Delaware domestic business corporation with its principal place of business and headquarters located at 1271 Avenue of the Americas, New York, New York. At all relevant times, Complex was an "employer" within the meaning of all applicable statutes.

11. Defendant Complex Media Holdings, LLC is a Delaware domestic business corporation with its principal place of business and headquarters located at 1271 Avenue of the Americas, New York, New York. At all relevant times, Complex was an "employer" within the meaning of all applicable statutes.

12. Defendant Richard Antoniello is the Chief Executive Officer at Complex. At all relevant times, Defendant Antoniello met the definition of a "supervisor" and "employer" of Plaintiff under all applicable statutes.

13. Defendant Scott Fintzy is the Vice President of Human Resources at Complex. At all relevant times, Defendant Fintzy has met the definition of a "supervisor" and "employer" of Plaintiff under all applicable statutes.

## FACTUAL ALLEGATIONS

**Ms. Abramov's Career and Dedication to the Company**

14. In or around January 17, 2015, Ms. Abramov began her employment at Complex under the title of Vice President of Business Intelligence.

15. Prior to joining Complex, Ms. Abramov had already achieved significant professional success having been the Chief Executive Officer ("CEO") of Right Action, Inc. for three years, where she led the company from near bankruptcy and declining sales to profitability, including sales growth of over 125%.

16. Complex aggressively pursued Ms. Abramov to join its team, and was urged to do so by its business consultant, Matthew Goldstein.

17. Upon Ms. Abramov's commencement of employment, she reported directly to the then-Chief Financial Officer Richard Sheldon, who in turn reported to Defendant Richard Antoniello, the Chief Executive Officer.

18. Ms. Abramov's role at Complex required sophistication, nuance and business savvy, as she was responsible for cross-functional analytics and development. In short, Ms. Abramov would analyze various aspects of Complex's business, highlight areas of success and failure and accordingly recommend improvements to increase operational efficiency across the board.

19. Ms. Abramov was extremely successful in her role at Complex, which can be attributed to her unique qualifications and her enthusiastic dedication to the Company.

20. The quality of Ms. Abramov's performance was reflected in her being one of the few employees to receive a bonus and a $20,000 raise, after her first year of employment.

21.     Moreover, Ms. Abramov's year-end review was exceptional and, in a 360-review conducted by Ms. Abramov and her peers, Ms. Abramov was widely praised by her colleagues.

**Ms. Abramov's Tumultuous Working Relationship with Scott Cherkin**

22.     While Ms. Abramov was doing extremely well by any measure, she had "butted heads" with Scott Cherkin, the Executive Vice President of Product and Business Development, on a few occasions.

23.     This was not to be unexpected as Ms. Abramov's role required her to "challenge the status quo" and, in a sense, "shake things up" to better Complex's business operations. It was nearly certain that others would disagree with her positions and perceive her – or her role – as intruding on their turf. Mr. Cherkin appeared to be one such individual.

24.     Ms. Abramov had, on a number of occasions, told Mr. Antoniello, Mr. Sheldon and Defendant Scott Fintzy, Vice President of Human Resources, (amongst others) that she had found Mr. Cherkin to be a very difficult person with whom to work.

25.     Ms. Abramov complained to Mr. Antoniello, Mr. Sheldon and Mr. Fintzy that Mr. Cherkin was aggressive, mocking and condescending towards her, creating unnecessary stress.

26.     Ms. Abramov reported that Mr. Cherkin would say things such as "You are part of the problem, not the solution" and "You don't know what you're talking about," and despite the fact that she did not work for him or report to him, he would tell her "You better inform me of everything you work on in my space," and he yelled at her when she refused to do so.

27.     Ms. Abramov asked for Mr. Cherkin to be spoken to about his conduct, but no remedial measures were ever taken.

**Ms. Abramov Discloses Her Pregnancy**

28.     In or around early June 2016, Ms. Abramov was overjoyed to learn that she was pregnant with her third child.

29.     However, Ms. Abramov also knew that she suffers from a medical condition which leads to high-risk pregnancy.

30.     Ms. Abramov has been diagnosed with an incompetent cervix, which can cause or contribute to premature birth or the loss of an otherwise healthy pregnancy.

31.     In or around July 2016, Ms. Abramov informed Mr. Sheldon and Mr. Fintzy that she was pregnant and that it would be a high-risk pregnancy due to her medical condition.

32.     The Company was also aware that Ms. Abramov had a threatened miscarriage due to her medical condition.

33.     At the time that Ms. Abramov disclosed her pregnancy, Complex was engaging in a restructuring as a result of its acquisition in the joint venture between Verizon Communications, Inc. and Hearst Corp.

34.     Throughout July and August, on numerous occasions, Ms. Abramov made it clear – as she had previously – to Mr. Antoniello, Mr. Sheldon, Mr. Fintzy and others that she could not work with Mr. Cherkin.

35.     At this point Ms. Abramov's complaint was not a matter of mere preference – Ms. Abramov made it clear that working with Mr. Cherkin would be detrimental to her pregnancy, her health and the health of her child.

36.     Ms. Abramov was deeply concerned that working with Mr. Cherkin would result in her experiencing high levels of stress, which she had been warned could lead to premature

birth, and – as the Company was well aware – Ms. Abramov was already prone to premature birth due to her medical condition.

37. On Thursday, September 15, 2016, Ms. Abramov underwent a medical procedure related to her cervical condition.

38. Ms. Abramov retuned to work the next day – Friday – without hesitation.

39. The next business day, Monday, September 19, 2016, Mr. Antoniello called Ms. Abramov to join him for a meeting and incredibly told her that she would now report to Mr. Cherkin, despite the fact that she had repeatedly made it clear that it would be problematic for her pregnancy and health.

40. Mr. Antoniello also informed her that he was placing another Vice President – Daniel Gosh-Roy – in a position between her and Mr. Cherkin.

41. Thus, while Ms. Abramov previously had her own group and a direct line to the decision-making body at Complex, immediately upon her return from a pregnancy-related procedure, she was demoted to a position where she was reporting to another Vice President, and ultimately reporting to Mr. Cherkin.

42. Ms. Abramov was in shock and tried her best to remain calm given that any added stress could end her pregnancy.

43. Later that day, Ms. Abramov sat down with Mr. Gosh-Roy to discuss the new reporting structure; however, while Ms. Abramov's focus was her job, Mr. Gosh-Roy's focus was her pregnancy.

44.     Mr. Gosh-Roy said that he had spoken to Mr. Antoniello and Mr. Cherkin already, and continued,

> "**Listen, I know what it's like to have a complicated pregnancy, it must be difficult to concentrate at work given the issues you have with your pregnancy. Your mind must be elsewhere and focused on your pregnancy and the complications.**"

45.     Mr. Gosh-Roy's comments were similar to other comments she had heard from others who reported to Mr. Cherkin.

46.     By way of example only, on one occasion, Ayalla Barazany, Vice President of Product Development, opined to Ms. Abramov that: **"You're having a difficult and complicated pregnancy, you should go on disability and get out of this mess**."

47.     However, Ms. Abramov was prepared to work and handle her pregnancy, and then continue to work as a mother of young children.

48.     Ms. Abramov is already the mother of two young children, so she did not view her medical condition or her pregnancy as a hindrance to her career.

49.     The meeting with Mr. Gosh-Roy ended with Ms. Abramov even more uncertain of her future at the Company.

50.     Ms. Abramov felt that not only was there a deliberate attempt to demote her and place her in a hostile position following her pregnancy and return from a related medical procedure, but it appeared that her pregnancy was a driving factor for these decisions.

51.     Later that same day, Ms. Abramov met with Mr. Fintzy to complain about this discriminatory treatment.

52.     Ms. Abramov complained to Mr. Fintzy that she felt it was totally unacceptable for her to be placed in Mr. Cherkin's vertical when she had made it well known that working directly with him would be harmful to her health and her child's health.

53. Ms. Abramov further complained that Mr. Gosh-Roy made offensive comments regarding her ability to handle her work and her pregnancy at the same time.

54. During this meeting, Ms. Abramov was so visibly shaken and overcome with emotion that she cried.

55. The following day, September 20, 2016, Ms. Abramov emailed a complaint to Mr. Fintzy stating that she did not think the new reporting structure was appropriate.

56. Ms. Abramov complained that she was offended by the manner in which Mr. Gosh-Roy had spoken about her pregnancy and ability to handle her work given her medical condition, and did not think it was acceptable for her to report to him under these circumstances.

57. Ms. Abramov spoke to Mr. Fintzy that same day and reiterated her complaints verbally.

58. To Ms. Abramov's knowledge, nothing was ever done to address her complaints.

**Retaliation Against Ms. Abramov**

59. Less than one week after Ms. Abramov had undergone surgery, and only two days after she had complained about her discriminatory treatment, Ms. Abramov was abruptly fired.

60. On September 22, 2016, Ms. Abramov was scheduled to speak to Mr. Antoniello to discuss this entire situation. The call was scheduled for 8:00 p.m.

61. However, at 4:00 p.m. that day, Ms. Abramov was called into a meeting with Mr. Fintzy and Cheryl Lomaglio, Director of Human Resources.

62. Mr. Fintzy informed Ms. Abramov that she had "resigned."

63. Ms. Abramov expressed her confusion, as she had done nothing to suggest she was interested in resigning.

9

64. Mr. Fintzy explained to Ms. Abramov that the Company was treating her as having resigned because she complained about the prospect of working with Mr. Cherkin.

65. Ms. Abramov never stated that she resigned.

66. Ms. Abramov certainly never used the word "resigned" to describe the state of her employment.

67. Ms. Abramov's security badge was immediately confiscated and her access to email was cut off.

68. The following day, September 23, 2016, Mr. Fintzy and the new CFO Jennifer Yousem called Ms. Abramov.

69. During the call, they repeatedly asked Ms. Abramov to confirm that she had resigned, which she repeatedly refused to acknowledge.

70. At one point, Ms. Abramov stated: **"If you are trying to get me to say I resigned, it's not going to happen. So, what's the purpose of this call?"**

71. Mr. Fintzy and Ms. Yousem failed to provide Ms. Abramov with any answer to her question.

### FIRST CAUSE OF ACTION
### (Interference in Violation of the FMLA)
*Against Defendants*

72. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

73. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA. At all times relevant herein, Defendants were and are "covered employers" within the meaning of the FMLA.

74. Defendants were aware that Ms. Abramov was pregnant and knew or perceived that Ms. Abramov would utilize her FMLA protected right to maternity leave.

75. By the actions described above, among others, Defendants violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's rights by, *inter alia*, terminating Ms. Abramov which thereby interfered with her ability to utilize her FMLA protected rights.

76. As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

77. Plaintiff is entitled to an award of liquidated damages, as Defendants violated the FMLA, and such conduct was not in good faith and there was not a reasonable basis for believing that such conduct was not a violation of the FMLA.

## SECOND CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
*Against All Defendants*

78. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

79. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender and/or pregnancy and/or disability and/or perceived disability in violation of the NYSHRL by denying Plaintiff the same terms and conditions of employment available to others based on her gender and/or pregnancy and/or disability and/or perceived disability, including, but not limited to, the termination of her employment.

80. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

### THIRD CAUSE OF ACTION
### (Retaliation in Violation of NYSHRL)
*Against all Defendants*

81. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

82. By the actions described above, among others, Defendants have retaliated against Plaintiff by, *inter alia*, terminating her employment in retaliation for her protected activity.

83. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted by law, in addition to reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### (Aiding and Abetting Violations of the NYSHRL)
*Against Defendants Antoniello and Fintzy*

84. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

85. Defendants Antoniello and Fintzy knowingly or recklessly aided and abetted the unlawful discriminatory and retaliatory conduct to which Plaintiff was subjected in violation of the NYSHRL.

86. As a direct and proximate result of Defendants Antoniello and Fintzy's unlawful aiding and abetting in violation of the NYSHRL, Plaintiff has suffered and continues to suffer

harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against all Defendants*

87. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

88. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender and/or pregnancy and/or disability and/or perceived disability in violation of the NYCHRL by denying Plaintiff the same terms and conditions of employment available to others based on her gender and/or pregnancy and/or disability and/or perceived disability, including, but not limited to, the termination of her employment.

89. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and costs.

90. Defendants' unlawful and discriminatory actions constitute knowing, malicious, willful, wanton and reckless violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)
*Against all Defendants*

91. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

92. By the actions described above, among others, Defendants have retaliated against Plaintiff by, *inter alia*, terminating her employment in retaliation for her protected activity.

93. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted by law, in addition to reasonable attorneys' fees and costs.

94. Defendants' unlawful and discriminatory actions constitute knowing, malicious, willful, wanton and reckless violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### (Aiding and Abetting Violations of the NYCHRL)
*Against Defendants Antoniello and Fintzy*

95. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

96. Defendants Antoniello and Fintzy knowingly or recklessly aided and abetted the unlawful discrimination and retaliation to which Plaintiff was subjected in violation of the NYCHRL.

97. As a direct and proximate result of Defendants Antoniello and Fintzy's unlawful aiding and abetting in violation of NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and costs.

98. Defendants Antoniello and Fintzy's unlawful aiding and abetting constitutes malicious, willful, wanton and reckless violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

A.   A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.   An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

C.   An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D.   An award of punitive damages in an amount to be determined at trial;

E.   An award of liquidated damages in an amount to be determined at trial;

F.   Pre-judgment interest on all amounts due;

G.   An award of Plaintiff's reasonable attorneys' fees and costs; and

H.   Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: November 30, 2016
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
David E. Gottlieb

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dgottlieb@wigdorlaw.com

*Attorneys for Plaintiff*